**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----- ---------------------------------------------------------x

**JEFFREY PARKER ,** on behalf of himself and all others similarly situated,

Plaintiff,

**-v.-**

**MANLY BANDS, LLC,**

Defendant.

-----------------------------------------------------------x

Case No. ___________

**CLASS ACTION COMPLAINT & DEMAND FOR JURY TRIAL**

Plaintiff **JEFFREY PARKER** ("Plaintiff" or "Mr. Parker"), individually and on behalf of himself and all others similarly situated (collectively, "Plaintiffs"), by and through his undersigned counsel, Robert Schonfeld, Esq. of JOSEPH & NORINSBERG, LLC, brings this action against Defendant **MANLY BANDS, LLC** ("MANLY BANDS" or "Defendant"), for violations of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 *et seq.*, the New York Human Rights Law, N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law, N.Y.C. Admin. Code §§ **8-101 et seq.**, arising from Defendant's failure to ensure that its e-commerce website, www.manlybands.com is accessible to blind and visually impaired individuals

## INTRODUCTION

1. Plaintiff, JEFFREY PARKER**,** is a resident of Bronx County and is permanently disabled due to legal blindness. Mr. Parker suffers from Retinitis Pigmentosa, a progressive degenerative disease of the retina that has reduced the visual field of his better eye to less than twenty degrees, rendering him legally blind under both state and federal standards. His condition has been evaluated and certified by his examining optometrist, Dr. Claudette Lomonaco, OD, on the New York State Commission for the Blind and Visually Handicapped Report of Legal Blindness, dated November 12, 2025. Dr. Lomonaco identified Retinitis Pigmentosa as the underlying cause of Plaintiff's qualifying visual impairment and confirmed that his condition meets the criteria for legal

blindness, entitling him to all privileges and accommodations afforded to individuals who are legally blind under applicable state and federal law.

2. Mr. Parker is a proficient user of screen reading technology, including JAWS and NVDA, and relies exclusively on keyboard navigation to access digital environments independently. Because he cannot visually perceive website content in the manner available to sighted users, he depends on websites to provide proper semantic structure, meaningful alternative text, labeled interactive controls, and programmatically determinable navigation. For blind and visually impaired consumers such as Mr. Parker, screen reading software is not optional; it is the only means by which he can independently access the internet, evaluate products, and complete commercial transactions without assistance from a sighted third party.

3. Defendant **MANLY BANDS, LLC** ("Manly Bands" or "Defendant") owns, operates, maintains, and/or controls the commercial e-commerce Website, **www.manlybands.com** (the "Website"), through which Defendant advertises, markets, customizes, and sells wedding bands, engagement rings, distinctive and nontraditional rings, matching and coordinated rings for couples, and other jewelry and related merchandise to members of the public, including consumers residing in New York

4. MANLY BANDS does not present itself through the Website merely as a seller of ordinary or conventional wedding jewelry. Rather, a defining characteristic of Defendant's business and merchandise is the unusual nature of the materials, designs, themes, textures, finishes, colors, and inlays incorporated into its rings. Defendant offers rings constructed from and incorporating materials far removed from the traditional gold, silver, or platinum wedding band, including black zirconium, titanium, genuine meteorite, authenticated prehistoric fossil and dinosaur bone, lava rock, specialty inlays, and other unconventional materials. Certain rings combine several such materials within a single design. For example, Defendant's **"The Sauron™"**, from its officially

licensed *The Lord of the Rings*™ collection, is an **8mm black zirconium band** featuring a charcoal-gray hammered exterior, genuine lava-rock inlay combined with ultraviolet-activated glow powder, a deep-red Cerakote interior sleeve, and official *The Lord of the Rings*™ engraving. Defendant's **"The Galactic Raptor"** provides another striking example of the unusual merchandise offered through the Website: it is offered in **9mm or 7mm black zirconium** and combines **authenticated Triceratops fossil, Gibeon meteorite shreds, and space titanium opal** within a single ring design. These characteristics are not incidental embellishments to otherwise interchangeable wedding bands; the unusual composition, origin, appearance, texture, finish, inlay, theme, and combination of materials are among the very characteristics by which Defendant distinguishes and markets its merchandise. A consumer visiting the Website is therefore not merely choosing among conventional rings of different colors or prices but may be deciding between rings incorporating materials originating from a prehistoric fossil, a meteorite, volcanic rock, or other unconventional sources, as well as themed and licensed designs. The ability to independently access and understand those product descriptions, materials, characteristics, available options, and distinctions is consequently an integral part of the consumer's ability to investigate Defendant's merchandise and make an informed purchasing decision.

5. The Website is an integral component of Defendant's retail business and provides consumers with access to Defendant's merchandise, product descriptions and images, prices, dimensions, materials, available sizes and options, purchasing controls, shopping-cart functionality, customer-service information, policies, and other information and services associated with Defendant's retail operations.

6. Mr. Parker has shared his life for nearly fourteen years with his partner, Lisa, whom he has known since childhood. Although circumstances separated them for a period of years, they unexpectedly reconnected later in life when Lisa recognized Mr. Parker by his voice and asked

whether he recognized her; he did. Their longstanding history and the years they have since shared as partners have made Lisa an extraordinarily important person in Mr. Parker's life

7. In September 2026, with the holiday season approaching, Mr. Parker began searching for a special gift for Lisa. Given the significance of their relationship, he did not want to purchase something ordinary or impersonal. He wanted to find a gift that was distinctive and memorable, something that he believed would appropriately reflect what Lisa and their nearly fourteen years together meant to him.

8. As a result of his blindness, Mr. Parker receives services from Lighthouse Guild, a New York organization that provides rehabilitation, support, training, healthcare, and other services to people who are blind or visually impaired. Lighthouse Guild maintains its New York facility at 250 West 64th Street in Manhattan, where Mr. Parker has participated in services and programs intended to assist individuals with vision loss in maintaining their independence.

9. It was through his connection with Lighthouse Guild that Mr. Parker learned about MANLY BANDS. While speaking with a counselor there, Mr. Parker learned that the counselor had received a MANLY BANDS ring as a gift from his girlfriend. Because Mr. Parker could not visually examine the ring himself, the counselor described the ring and its unusual appearance to him. The description immediately captured Mr. Parker's attention. Already searching for a distinctive holiday gift for Lisa, Mr. Parker became interested in the unusual rings offered by MANLY BANDS and decided to go online to Defendant's Website to learn more about them and shop for a ring for Lisa.

10. MANLY BANDS distinguishes its merchandise from conventional jewelry by offering unusually designed rings incorporating distinctive materials, themes, colors, textures, and combinations that extend well beyond traditional gold, silver, platinum, or otherwise conventional wedding bands. The unusual character of this merchandise was particularly significant to Mr. Parker

because he was not searching for an ordinary or interchangeable wedding band. He wanted to investigate a ring that was itself distinctive and capable of conveying personal meaning.

11. That distinction was important to Mr. Parker for an intensely personal reason. He was investigating a ring for **Lisa**, a woman whom he considers extraordinarily special and unlike anyone else in his life. In Mr. Parker's view, Lisa is quite literally his "one in a million," and he therefore wanted a ring that was equally uncommon rather than a conventional band that could be purchased from virtually any jewelry retailer. MANLY BANDS attracted Mr. Parker precisely because its unusual designs appeared capable of providing the distinctive and personal character he was seeking.

12. Mr. Parker accordingly developed a genuine and particularized interest in Manly Bands and its merchandise. His interest was not based upon a generalized desire to browse jewelry websites or merely test Defendant's Website for accessibility. Rather, he deliberately selected Defendant's Website because of the uncommon rings offered there and intended to investigate particular designs, learn about the materials and characteristics that distinguished them, compare their respective prices, dimensions, available sizes and options, and ultimately determine whether one of Defendant's rings was appropriate for the personal purpose he had in mind.

13. For Mr. Parker to make that determination independently, however, he required access to the same product information that Defendant makes visually available to sighted consumers. The distinctive nature of Defendant's rings made that information particularly important. Details concerning the materials incorporated into a particular ring, its design, composition, color, finish, dimensions, available sizes, price and other characteristics were not incidental to his purchasing decision; they were the very features that caused him to select MANLY BANDS for investigation in the first instance.

14. Defendant controls the policies, practices, design, coding, content, maintenance, and

operation of the Website and is responsible for ensuring that the Website, and the goods, services, privileges, advantages, and accommodations offered through it, are accessible to blind and visually impaired consumers.

15. Through the Website, sighted consumers can independently investigate Defendant's merchandise, visually examine and compare its rings, obtain information material to purchasing decisions, evaluate available designs and options, determine prices and availability, select merchandise, and complete transactions. Mr. Parker attempted to use Defendant's Website with his NVDA screen-reading software for the genuine purpose of investigating Defendant's rings and determining whether to purchase one. During his visits, however, accessibility barriers interfered with his ability to independently perceive, understand, navigate, and interact with material Website content and functionality.

16. Because portions of the Website were not accessible to Mr. Parker through his screen reader and keyboard navigation, he could not independently obtain information and utilize functionality equivalent to that made available to sighted consumers. Unlike a sighted consumer who could visually examine Defendant's distinctive rings, compare their appearance and characteristics, navigate among available choices, and obtain the information necessary to make an informed purchasing decision, Mr. Parker encountered barriers that impeded the very investigation, comparison, and selection process for which he had deliberately visited Manly Bands.

17. These barriers interfered with Mr. Parker's ability to independently identify, investigate, compare, and evaluate Defendant's merchandise and to obtain information necessary to make an informed purchasing decision. As a result, he was denied the opportunity to use the Website with a degree of independence, privacy, and effectiveness equivalent to that afforded to sighted consumers.

18. Defendant's failure to provide an independently accessible Website therefore caused

Mr. Parker a concrete and particularized injury directly related to his disability and his genuine interest in Defendant's merchandise. Mr. Parker was not merely testing a website in which he had no consumer interest. He sought access to Defendant's merchandise for a specific personal purpose, selected Defendant because of the unusual and distinctive nature of the rings it offered, and required accessible product information and functionality to independently determine whether one of those rings was appropriate for his intended purchase.

19. The accessibility barriers encountered by Mr. Parker are capable of remediation through established website-accessibility practices, including meaningful text alternatives, programmatically determinable labels and accessible names for interactive controls, descriptive links, properly structured headings and forms, and keyboard-operable functionality. Unless Defendant remedies the barriers affecting access to its Website and maintains the Website in an accessible condition, Mr. Parker will continue to be denied independent access to the information, merchandise, and retail services Defendant makes available to sighted consumers.

20. Mr. Parker remains genuinely interested in Defendant's distinctive merchandise and intends to return to the Website to further investigate and compare the rings offered by Manly Bands and, if he can independently obtain the information necessary to evaluate and select an appropriate ring, complete a purchase. His ability to do so remains dependent upon Defendant providing meaningful and independent access to the Website and the goods, services, information, privileges, advantages, and accommodations offered thereon.

21. Defendant's failure to design, construct, maintain, and operate its Website so that it is independently accessible to blind and visually impaired consumers denies Mr. Parker full and equal access to Defendant's goods, services, privileges, advantages, and accommodations. Plaintiff therefore brings this civil action on behalf of himself and all others similarly situated to remedy Defendant's ongoing discrimination under Title III of the Americans with Disabilities Act ("ADA"),

42 U.S.C. §§ 12181 et seq.; the New York State Human Rights Law, N.Y. Exec. Law §§ 290 et seq.; and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-100 et seq., and seeks declaratory and injunctive relief requiring Defendant to provide and maintain meaningful accessibility for blind and visually impaired consumers.

## JURISDICTION & VENUE

22. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under the laws of the United States, including Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.*

23. This Court has supplemental jurisdiction over Plaintiff's related state and local law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiff's federal ADA claims.

24. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(2) because Plaintiff resides in Bronx County which is within this District, and accessed Defendant's website from within this District, and experienced the discriminatory barriers alleged herein in this District. Courts in this Circuit have repeatedly held that venue is proper where the plaintiff experiences the discriminatory denial of access to a website. See, *Velazquez v. Don Roberto Jewelers, Inc.*, No. 1:22-cv-05049 (S.D.N.Y. 2023) (Ramos, J.) (venue proper where plaintiff encountered website barriers in the district); see also *Romero v. 88 Acres Foods, Inc.,* 2022 U.S. Dist. LEXIS 9040 (S.D.N.Y. Jan. 18, 2022).

25. Defendant is subject to personal jurisdiction in this District because it purposefully directs business activities toward Bronx consumers through its highly interactive ecommerce website, www.manlybands.com which allows users to browse inventory, review product information, create accounts, and complete purchases. Defendant ships products directly to New York residents, including Bronx County and derives substantial revenue from sales to consumers in

this State. Courts in this Circuit have consistently held that operators of nationwide ecommerce websites are subject to personal jurisdiction in New York when they purposefully avail themselves of the privilege of conducting business here. See *Andrews v. Blick Art Materials, LLC,* 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018).

26. The United States Department of Justice has repeatedly confirmed that the ADA applies to the goods, services, privileges, and activities offered by public accommodations on the web. The DOJ's Guidance on Web Accessibility and the ADA states that the ADA's requirements apply to all services offered by public accommodations, including those offered online

27. This Court is empowered to issue declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## **THE PARTIES**

28. Plaintiff JEFFREY PARKER is a resident of Bronx County, New York, and is legally blind and visually impaired, qualifying as an individual with a disability under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(1)–(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and applicable New York State and New York City law. Mr. Parker suffers from Retinitis Pigmentosa, a progressive degenerative disease of the retina that has reduced the visual field of his better eye to less than twenty degrees. His legal blindness has been evaluated and certified by his examining optometrist, Claudette Lomonaco, O.D., on a New York State Commission for the Blind and Visually Handicapped Report of Legal Blindness dated November 12, 2025. (See Ex. A.)

29. Plaintiff is a proficient user of screen-reader technology, including NVDA, and relies upon keyboard navigation and accessible coding to browse, understand, and interact with websites. Because he cannot independently perceive and interpret information presented solely through visual means, Mr. Parker depends upon businesses to design, construct, and maintain their websites in a

manner compatible with screen-reading software. Proper semantic structure, meaningful alternative text, labeled interactive controls, descriptive link text, and accessible navigation are essential for Plaintiff to independently obtain information, investigate merchandise, make informed purchasing decisions, and access digital content.

30. Defendant MANLY BANDS, LLC ("Manly Brands" or "Defendant") owns, operates, maintains, and/or controls the commercial Website www.manlybrands.com (the "Website"), through which Defendant markets and sells its merchandise to consumers throughout the United States, including consumers residing in New York.

31. Defendant's Website is a significant component of its retail operations and serves as the means through which Defendant makes its distinctive merchandise, product information, purchasing functionality, customer-service information, policies, and related goods and services available to members of the public.

32. Defendant advertises, displays, markets, and sells  and related merchandise to members of the public, including consumers residing in New York.

33. Defendant controls the policies, practices, design, coding, content, maintenance, and operation of the Website and is responsible for ensuring that the Website, and the goods, services, privileges, advantages, and accommodations offered through it, are accessible to blind and visually impaired consumers.

34. The Website is a significant component of Defendant's retail operations. It provides consumers with access to Defendant's merchandise, product descriptions, images, prices, sizes, colors, availability information, purchasing controls, shopping-cart functionality, customer-service information, policies, and other information and services associated with Defendant's retail business.

35. Defendant offers sighted consumers the ability to independently investigate its

products, compare merchandise and available options, obtain information material to purchasing decisions, investigate retail-store and delivery options, select merchandise, and complete transactions through the Website. Defendant has failed to provide Plaintiff and other blind and visually impaired consumers with an equivalent opportunity to independently access and use those same goods, services, privileges, advantages, and accommodations.

36. The removal of the barriers alleged herein is readily achievable and may be accomplished through established accessibility practices, including the provision of meaningful text alternatives, programmatically determinable labels, descriptive links, properly structured headings and forms, accessible names for interactive elements, and keyboard-operable functionality.

37. Defendant's failure to provide an accessible Website has denied Plaintiff full and equal access to Defendant's merchandise and retail services and has interfered with his ability to independently investigate and evaluate the specific products in which he is interested, obtain information material to her purchasing decisions, and determine whether to purchase Defendant's merchandise.

## NATURE OF ACTION

38. This action arises under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq., challenging Defendant's operation of a public-facing website that denies blind and visually impaired individuals full and equal access. Plaintiff, a legally blind resident of this District, attempted to access Defendant's Website using screen-reading software but encountered multiple access barriers that prevented meaningful engagement with its services. Defendant's failure to design and maintain its Website in accordance with the Web Content Accessibility Guidelines (WCAG 2.1) constitutes unlawful discrimination and violates federal accessibility standards.

39. The Internet has become a vital source of information and a primary tool for conducting everyday activities such as shopping, learning, banking, researching, and

communicating — for sighted, blind, and visually impaired individuals alike.

40. In today's digital environment, blind and visually impaired individuals access websites using keyboards in conjunction with screen access software that vocalizes visual content or displays it on a refreshable Braille device. This technology, known as screen-reading software, is currently the only method by which blind or visually impaired persons may independently access the Internet. Unless websites are properly coded to interface with screen-reading software, blind and visually impaired users are unable to fully access the information, products, and services offered online.

41. Users of Windows-enabled computers have access to several screen-reading programs, including Job Access With Speech ("JAWS"), which is commercially available, and NonVisual Desktop Access ("NVDA"), which is open-source. These tools are indispensable for blind users and represent the only means by which they can independently navigate the Internet.

42. Plaintiff, JEFFREY PARKER is a blind, visually impaired individual and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), its implementing regulations at 28 C.F.R. §§ 36.101 et seq., and the NYSHRL, NYCHRL, and NYCRL. For screen-reading software to function, website content must be capable of being rendered into text. If the underlying code fails to support this conversion, blind users are unable to access the same content available to sighted users. Screen-reading software translates the visual internet into an auditory equivalent, reading page content, announcing links, buttons, headings, labels, and other interface elements so the user can navigate through keyboard commands.

43. The World Wide Web Consortium ("W3C") has published the Web Content Accessibility Guidelines ("WCAG") 2.0 and 2.1, which establish internationally recognized standards for digital accessibility. These guidelines are widely adopted by private entities and government agencies, including the U.S. Department of Justice, and have been recognized by courts

as the appropriate benchmark for ADA compliance.

44. Non-compliant websites pose recurring barriers to blind and visually impaired users. Common violations include, but are not limited to:

a. Missing text equivalents for non-text elements (e.g., product images without alternative text);

b. Unlabeled frames and navigation regions;

c. Scripts without accessible alternatives;

d. Inaccessible forms and input fields;

e. Content conveyed solely through visual presentation;

f. Inability to resize text without loss of functionality;

g. Time limits that cannot be adjusted or disabled;

h. Missing or ambiguous page titles and headings;

i. Links lacking descriptive context;

j. Keyboard focus indicators that are not discernible;

k. Undetectable default language settings;

l. Components that trigger unexpected context changes;

m. Settings that alter context without user notice;

n. Input fields lacking labels or instructions;

o. Improperly nested markup, duplicate attributes, and non-unique IDs;

p. Inaccessible PDF files;

q. User interface elements whose roles and states cannot be programmatically determined; and/or

r. Empty buttons, empty links, and unlabeled interactive controls that prevent a screen reader user from independently navigating and completing a transaction.

## STATEMENT OF FACTS

45. Plaintiff JEFFREY PARKER is a legally blind and visually impaired consumer residing in New York. Mr. Parker suffers from Retinitis Pigmentosa, which substantially limits the major life activity of seeing. His optometrist, Claudette Lomonaco, O.D., has certified his legal blindness, identifying Retinitis Pigmentosa as the cause of his visual disability and confirming blindness in his better eye, with best correction, of not more than 20/200. (See Exhibit A.)

46. Because of his visual disability, Plaintiff cannot independently perceive and obtain information presented solely through visual means. He therefore relies upon assistive technology, including screen-reading software and keyboard navigation, to independently access digital content and obtain information that sighted consumers are able to obtain visually.

47. As a result of his blindness, Mr. Parker receives services through various non-profit organizations including Lighthouse Guild, serving individuals who are blind and visually impaired. Mr. Parker and his similarly sight-impaired partner, Lisa Vasquez, have shared a relationship for nearly fourteen years. In September 2026, with the holiday season approaching, Mr. Parker began searching for a special gift for Lisa. Given the significance of their relationship, he did not want to purchase something ordinary or impersonal. He wanted to find a gift that was distinctive and memorable and that he believed would appropriately reflect what Lisa and their years together meant to him.

48. In September 2026, while at Lighthouse Guild, Mr. Parker spoke with an on-site counselor who had received a Manly Bands ring as a gift from his wife. Because Mr. Parker could not visually examine the ring, the counselor described its unusual appearance to him and told him about Manly Bands. That same day, on September 8, 2026, Plaintiff accessed Defendant's Website to see for himself whether Defendant offered the type of distinctive ring and/or jewelry he had been seeking.

49. As stated, Plaintiff is a proficient user of screen-reading technology, including NonVisual Desktop Access ("NVDA"), which he primarily uses to browse websites, investigate merchandise, obtain product descriptions and pricing, compare products and available options, determine product availability, select merchandise, and make online purchases. When a website is not properly coded for compatibility with screen-reading technology, Plaintiff cannot obtain visually presented information or independently operate website functionality on equal terms with sighted consumers.

50. Plaintiff's interest was personal and concrete. Plaintiff and his longtime paramour have been together for approximately fourteen years, and both are visually impaired. Despite the limitations associated with their visual disabilities, they maintain a shared sense of humor about the challenges they encounter and value their independence, including the ability to make personal purchasing decisions without depending upon sighted individuals to investigate merchandise for them.

51. Plaintiff became particularly interested in purchasing rings that would have individual character while also reflecting the longstanding relationship he shares with his paramour. Rather than simply purchasing identical traditional bands, Plaintiff was interested in comparing distinctly styled rings and independently determining which designs, materials, features, prices, and characteristics best suited each of them.

52. Among the merchandise that particularly interested Plaintiff was **"The Lunar,"** a ring from Defendant's NASA-Inspired Collection that Plaintiff considered for himself. According to Defendant's Website, The Lunar is crafted from lightweight titanium and etched to resemble the texture of the moon's surface, with a satin finish and an interior engraving of NASA's iconic "worm" logo. Defendant describes the ring as a tribute to the moon and associates its design with dreamers, explorers, and those who look beyond themselves toward something greater. That theme

resonated personally with Mr. Parker. Although he has received a bleak prognosis concerning his vision, he refuses to define himself or his future by that prognosis. He remains hopeful and committed to improving his health through significant changes in his diet, outlook, and daily life, while maintaining his hope that advances in treatment and his own perseverance may one day improve his circumstances. For Mr. Parker, The Lunar therefore represented more than an unusual ring; its themes of exploration, optimism, and looking beyond present limitations reflected qualities with which he personally identified.

53. Plaintiff was separately drawn to **"The Shelby,"** a ring offered in Defendant's "Rings for Her" collection, which he considered for Lisa, his longtime partner and paramour. The Shelby is crafted from solid 14k rose gold and features a .9-carat lab-grown pink diamond displayed in a classic solitaire setting on a slender 2mm band. Defendant presents the ring as bold rather than understated, with the pink diamond intentionally commanding attention as the centerpiece of the design. Those qualities immediately appealed to Mr. Parker because they reminded him of Lisa. After nearly fourteen years together, Mr. Parker regards Lisa as beautiful, striking, confident, and truly one of a kind, and he wanted a ring that was equally distinctive rather than something ordinary or interchangeable. To Mr. Parker, **The Shelby** appeared to possess the beauty, individuality, and unmistakable presence that he associates with Lisa, making it particularly meaningful to him as a potential gift for his longtime partner.

54. Plaintiff did not intend merely to browse Defendant's Website or test it for accessibility. He wanted to investigate Defendant's merchandise for the ordinary consumer purpose for which the Website exists: to compare available rings, obtain information material to a purchasing decision, determine appropriate styles and sizes, evaluate their respective prices and value, and, if satisfied with the available choices, purchase merchandise.

55. For those purposes, Plaintiff accessed Defendant's Website using NVDA and

keyboard navigation on **September 20, 2026, September 27, 2026, and October 10, 2026**. On each occasion, Plaintiff attempted to independently navigate Defendant's Website and obtain information concerning Defendant's rings and the purchasing options available to him.

56. During Plaintiff's visits, Plaintiff encountered accessibility barriers that interfered with the ability of NVDA to identify, interpret, and communicate portions of the Website's content and functionality. These barriers affected precisely the information and controls Plaintiff needed to independently investigate merchandise and proceed toward a purchase.

57. Among the barriers Plaintiff encountered were product images and other visually presented content for which his screen reader did not provide sufficiently meaningful alternative information to enable him to understand the information being communicated visually. Because Plaintiff could not compensate by simply looking at the screen, inaccessible or inadequately described visual content prevented him from independently obtaining characteristics of the merchandise that were available visually to sighted consumers.

58. This barrier was particularly consequential while Plaintiff investigated rings such as The Shelby and The Lunar, Plaintiff was attempting to compare materially different designs and needed meaningful information concerning their respective appearances, construction, materials, and other product characteristics. Where that information was conveyed visually but was not meaningfully communicated through NVDA, Plaintiff could not independently perform the comparison he had visited the Website to make.

59. Plaintiff also encountered interactive elements and controls that NVDA did not identify with sufficiently meaningful accessible names or labels to permit him to confidently understand their purpose. Plaintiff therefore could not reliably determine the function of certain controls associated with navigating merchandise, selecting product options, choosing appropriate ring configurations or sizes, or proceeding toward a transaction.

60. Plaintiff additionally encountered links whose purpose or destination was not adequately communicated through NVDA. Because Plaintiff uses his screen reader's link-navigation functionality to efficiently locate relevant portions of websites, inadequately descriptive links impeded his ability to identify and navigate directly to the product information, options, and functionality he sought.

61. Plaintiff also encountered accessibility problems affecting keyboard and focus navigation. As Plaintiff moved through Website content using the keyboard, the information communicated through NVDA did not consistently permit him to determine his location on the page, the purpose of the element receiving focus, or the relationship between the focused element and the merchandise or functionality he was attempting to investigate.

62. These deficiencies had consequences that were fundamentally different for Plaintiff than for a sighted consumer. A sighted consumer encountering an inadequately identified image or control could visually inspect the screen to determine the appearance of a ring, recognize a button or other control, determine which product option or size was being presented or selected, and visually confirm the result of an attempted interaction. Plaintiff could not.

63. As a result, Plaintiff could not independently obtain all of the product information he considered material to deciding between the rings, confidently compare the available choices, reliably identify and operate all necessary product-selection and purchasing controls, determine with confidence that he had selected the intended product configuration, or independently proceed through the Website's purchasing process with the same confidence and effectiveness afforded to sighted consumers.

64. Plaintiff returned to the Website on separate occasions because his initial difficulties did not eliminate his desire to investigate Defendant's merchandise. He remained interested in comparing the available rings and determining whether Defendant offered products appropriate for

himself and his paramour. Nevertheless, his subsequent visits again presented accessibility difficulties interfering with his ability to independently accomplish those shopping purposes.

65. Plaintiff's repeated experiences were particularly significant because the purchasing decision he sought to make was inherently personal. The rings were intended to reflect a relationship spanning approximately fourteen years, and Plaintiff wanted to participate independently in selecting them rather than surrender that decision to a sighted friend, family member, or other third party merely because Defendant's Website could not effectively communicate its content and functionality through his assistive technology.

66. Plaintiff therefore refrained from purchasing the rings. His decision was not caused by an absence of interest in Defendant's merchandise. Rather, the barriers prevented him from independently obtaining and evaluating information he considered necessary to determine which rings were appropriate, confidently make the necessary product and sizing selections, and proceed with a purchase.

67. The barriers Plaintiff encountered were not merely technical irregularities divorced from his shopping experience. They directly interfered with the particular activities Plaintiff visited Defendant's Website to perform: identifying merchandise, investigating distinctly styled rings, obtaining material product information, comparing options, making informed product and sizing selections, and proceeding toward an online transaction.

68. Because Plaintiff could not visually compensate for information or functionality that NVDA failed to communicate, these barriers denied him the degree of privacy and independence afforded to sighted consumers. Plaintiff should not be required to disclose or delegate a personal purchasing decision to a sighted person simply to obtain information and operate functionality that Defendant independently provides to sighted customers through its Website.

69. Plaintiff remains genuinely interested in Defendant's merchandise, including The

Lynchburg and The One Ring, as well as comparable rings Defendant may offer. His interest arises from the recommendations of close friends and family that originally led him to Defendant, the particular rings he subsequently identified, his desire to obtain distinctive rings for himself and his longtime paramour, and his desire to independently evaluate whether Defendant's merchandise offers the style, materials, features, suitability, and value he seeks.

70. Plaintiff intends to return to Defendant's Website after the accessibility barriers are removed to obtain the information previously denied to him, determine whether **The Lynchburg, The One Ring**, or comparable rings remain available and appropriate for their intended purposes, compare available styles, materials, sizes, prices, and purchasing options, and purchase Defendant's merchandise if he determines that the rings meet his needs, preferences, and budget.

71. Plaintiff is presently deterred from returning to Defendant's Website to complete his intended shopping activities because, based upon the accessibility barriers he encountered during his prior visits, he reasonably expects that the same barriers will again interfere with his ability to independently investigate Defendant's merchandise and proceed toward a purchase.

72. Unless Defendant remediates the Website and maintains its accessibility, Plaintiff will continue to be denied full and equal access to Defendant's online goods and services and will face the same threatened injury when he returns for the specific shopping purposes alleged herein. Plaintiff therefore seeks prospective injunctive relief requiring Defendant to remove the accessibility barriers and provide blind and visually impaired consumers full and equal access to the goods and services offered through its Website.

## CLASS ACTION ALLEGATIONS

73. Plaintiff JEFFREY PARKER brings this action on behalf of herself, and all others similarly situated pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure. Plaintiff seeks certification of a nationwide class consisting of:

All blind and visually impaired individuals in the United States who use screen-reading software or other assistive technology and who have attempted to access www.manlybands.com and, as a result of Defendant's failure to design, construct, maintain, and operate the Website in an accessible manner, were denied full and equal access to the goods, services, information, privileges, advantages, and accommodations offered through the Website.

74. Plaintiff also seeks certification of a New York subclass consisting of:

All legally blind individuals residing in the State of New York, who have attempted to access and were denied equal access to the goods, services, and information offered thereon.

75. The members of the Class and Subclass are so numerous that joinder of all members is impracticable. Defendant operates a nationwide ecommerce platform and markets its products to consumers throughout the United States. Upon information and belief, thousands of blind and visually impaired individuals have attempted to access www.manlybands.com and have been denied equal access due to the systemic accessibility barriers confirmed by SORT SITE audits, and by Plaintiff's declarations, which corroborates the automated audit results and confirms that Defendant's Website contains pervasive WCAG 2.1 Level A and AA violations — including missing alternative text, empty buttons, empty links, missing form labels, broken ARIA references, inaccessible focus indicators, and nonsemantic navigation elements — that uniformly impact blind users across multiple pages and multiple visits. These barriers are not isolated anomalies but reflect a site-wide pattern of non-compliance that affects all blind consumers who attempt to access Defendant's website, thereby rendering the Class and Subclass sufficiently numerous for certification.

76. Common questions of law and fact exist as to all members of the Class and Subclass and predominate over any questions affecting only individual members. These common questions

include, but are not limited to:

- Whether Defendant's Website contains accessibility barriers that prevent blind individuals from accessing its goods and services;
- Whether Defendant's failure to make its Website accessible violates Title III of the ADA;
- Whether Defendant's failure to maintain accessible digital content violates New York State and New York City disability rights laws;
- Whether Defendant's conduct constitutes ongoing discrimination against blind consumers; and
- Whether injunctive relief is warranted to require Defendant to bring its Website into compliance with WCAG 2.1.

77. Plaintiff's claims are typical of the claims of the Class and Subclass because Plaintiff, like all members of the Class, is legally blind, uses screenreading software, and was denied equal access to Defendant's Website due to the same systemic accessibility barriers identified in the SortSite and WAVE reports.

78. Plaintiff will fairly and adequately represent and protect the interests of the Class and Subclass. Plaintiff has retained counsel experienced in ADA litigation, class actions, and digital accessibility matters.

79. Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, making final injunctive relief appropriate with respect to the Class as a whole. Defendant continues to operate an inaccessible Website without any policy, plan, or practice to ensure accessibility, thereby subjecting all blind users to the same discriminatory barriers.

80. Certification under Rule 23(b)(2) is appropriate because Defendant has failed to design, construct, maintain, and operate its Website in compliance with WCAG 2.1, and because Defendant's actions apply generally to all blind individuals who attempt to use the Website.

Declaratory and injunctive relief is the only appropriate remedy to ensure equal access for Plaintiff and the Class.

**FIRST CAUSE OF ACTION**
**(Violations of the ADA, 42 U.S.C. § 12182 *et seq.)***

81. Plaintiff, **JEFFREY PARKER**, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

1. Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

82. Defendant's Website, www.manlybands.com is a service of a place of public accommodation and a digital gateway through which Defendant offers goods, services, privileges, and advantages to the general public. As such, the Website must be equally accessible to all consumers, including blind and visually impaired individuals who rely on screen-reading technology.

83. Defendant has failed to design, construct, maintain, and operate its website in a manner that is fully accessible to blind and visually impaired individuals, in violation of Title III of the ADA and its implementing regulations.

84. Defendant's website contains numerous accessibility barriers—including missing alternative text, broken ARIA references, unlabeled buttons, inaccessible pop-ups, improper heading structure, and aria-hidden focusable content—that prevent blind users from perceiving, navigating, and interacting with the website.

85. Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny

individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

86. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, inter alia:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

87. The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, www.manlybands.com has not been provided services that are provided to other patrons who are not disabled; and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct, as the violations are ongoing. Upon information and belief,

Defendant has received prior notice of these accessibility anomalies through consumer complaints, automated audit findings, and industry-standard compliance tools. Despite this notice, Defendant has failed to implement WCAG-compliant remediation, demonstrating a pattern of disregard for its obligations under federal law.

88. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief** below.

**SECOND CAUSE OF ACTION**
**(New York State Human Rights Law)**
**(“NYSHRL”)**

89. Plaintiff, **JEFFREY PARKER ,** on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

90. At all times relevant to this action, the New York State Human Rights Law (“NYSHRL”), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

91. Plaintiff, at all times relevant to this action, as a result of her loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

92. Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, www.manlybands.com within the meaning of Article 15 of N.Y. Executive Law § 292(9). Defendant is a “person” within the meaning of Article 15 of N.Y. Executive Law § 292(1).

93. Plaintiff has visited the Website, www.manlybands.com on a number of occasions and has encountered barriers to her access that exist.

94. Under Article 15 N.Y. Executive Law § 296(2)(a) “it shall be an unlawful

discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

95. Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

96. Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

97. The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law

§ 296(2)(c).

98. Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

99. Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

100. Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

101. Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

102. Plaintiff repeats and realleges every allegation contained in the foregoing paragraphs as if fully set forth herein.

103. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes Defendant denies, that Defendant's website contains access barriers denying blind customers full and equal access to the products, services, and facilities offered through the website.

104. A judicial declaration is necessary and appropriate at this time so that the parties may know their respective rights and duties and act accordingly.

**THIRD CAUSE OF ACTION**
**(Violation of New York State Civil Rights Law)**
**("NYCRL")**

105. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

106. Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Notice to Attorney General)

107. Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

108. No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

109. § 292 of Article 15 of the N.Y. Executive Law deems a disability, a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

110. Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as Defendant's Website, www.manlybands.com is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

111. Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

112. Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

113. Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id.*..

114. Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

**<u>FOURTH CAUSE OF ACTION</u>**
**(Violations of the New York City Human Rights Law)**
**("NYCHRL")**

115. Plaintiff, **JEFFREY PARKER,** on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

116. N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

117. Defendant is subject to NYCHRL because it owns and operates the Website,

www.manlybands.com making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

118. Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

119. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

120. Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

a. constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b. constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c. failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

121. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

122. As such, Defendant discriminates and will continue in the future to discriminate

against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

123. Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

124. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

125. Plaintiff is also entitled to reasonable attorneys' fees and costs.

126. Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**(Declaratory Relief)**

127. Plaintiff, **JEFFREY PARKER** , on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

128. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.*, prohibiting discrimination against the blind.

129. A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff respectfully requests that this Court grant the following relief:

- A preliminary and permanent injunction prohibiting Defendant from violating Title III of the ADA, 42 U.S.C. § 12182 et seq.;
- A preliminary and permanent injunction requiring Defendant to take all steps necessary to make www.manlybands.com fully accessible to and usable by blind and visually impaired individuals, including through adoption and maintenance of WCAG-conforming accessibility measures;
- A declaration that Defendant owns, maintains, controls, and/or operates its website in a manner that discriminates against blind individuals and fails to provide equal access as required by law;
- An order certifying the proposed Class and New York Subclass under Fed. R. Civ. P. 23, appointing Plaintiff as Class Representative, and appointing him counsel as Class Counsel;
- An award of costs, litigation expenses, and reasonable attorneys' fees to the fullest extent permitted by law; and
- Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: New York, New York
November 16, 2026

Respectfully submitted,
**JOSEPH & NORINSBERG, LLC**
*/s/ Robert Schonfeld*
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com